## ABB AUTOMATION INC., Plaintiff,

v.

## SCHLUMBERGER RESOURCE MANAGEMENT SERVICES, INC., Defendant.

### No. CIV.A.01–077–SLR.

United States District Court, D. Delaware.

March 27, 2003.

---

Donald F. Parsons, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Plaintiff.

Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Defendant.

## MEMORANDUM ORDER

SUE L. ROBINSON, District Judge.

At Wilmington this 27th day of March, 2003, having heard oral argument and having reviewed papers submitted in connection therewith;

IT IS ORDERED that the disputed claim language in United States Patent Nos. 5,457,621; 5,621,629; 5,903,145; 5,555,508; and 5,548,527, as identified by the above referenced parties, shall be construed as follows, consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit:[1]

### A. The '621 and '629 Patents

#### 1. "A Power Supply for Use in Apparatus for Electronically Measuring or Distributing Electrical Energy, Said Electrical Energy Defining an Input Voltage."

■ Defendant argues that this preamble is not limiting and, therefore, does not need to be construed. This argument has no merit. The antecedent basis for the "said input voltage" is within the preamble. The preamble is essential to understanding limitations in the claim body and limits the claim scope. However, the phrase "for use in apparatus for electronically measuring or distributing electrical energy" merely indicates an intended use and does not operate to limit the scope of the claims. The remaining text of the preamble shall be construed with its ordinary meaning; no further construction is necessary.

#### 2. "Switching Member."

■ The specification defines the switching member as a transistor. ('621 patent, col. 6, 11. 57–58) The court shall apply the ordinary definition of the word "transistor." The term "transistor" means "a solid state electronic device that is used to control the flow of electricity in electronic equipment[.]"[2] The phrase "switching member" shall be construed to mean "a solid state electronic device that is used to control the flow of electricity in electronic equipment."

#### 3. "Controller."

■ The court shall apply the ordinary definition of the word "controller" in the relevant art. Thus, the term "controller" shall be construed to mean "electronic circuitry that generates a control signal."

#### 4. "In Response to the Output of Said Power Supply."

■ The parties' dispute regarding this claim limitation is with respect to whether "response" means "direct response" or "indirect response." The ordinary meaning of the term "response" is "a reaction ... to a specific stimulus."[3] The claim itself states that the "second winding defines the

---

1. The court notes that claim construction is not final until judgment is entered. The parties in the case at bar have provided an excessive amount of paper but little substance for the court to determine the proper claim construction. Furthermore, the parties apparently developed their claim construction with a focus on obtaining summary judgment of infringement or invalidity. If, on a more developed record, the court finds the current claim construction to be in error, the claims will be re-construed accordingly.

2. *Merriam–Webster's Collegiate Dictionary* 1254 (10th ed.1997).

3. *The American Heritage Dictionary*, 1053 (second college edition 1982).

output of said power supply[.]" ('621 patent, col. 10, 11. 38–39) The phrase "a controller . . . generating said control signal in response to the output of said power supply" means "the controller generates the control signal based on a direct reaction from the second winding."

### 5. "Permitting and Preventing the Flow of Current."

The parties agree this phrase should be interpreted consistent with the construction of the term "switching member." No further construction is necessary.

### 6. "Generating Said Control Signal."

The parties agree this phrase should be interpreted consistent with the construction of the term "controller." No further construction is necessary.

### 7. "A Method for Supplying Power in Apparatus for Electronically Metering Electrical Energy Supplied by an Electrical Service Provider, Said Electrical Energy Being Specified from a Wide Range of Service Voltages Supplied by Electrical Service Providers."

■ Defendant argues that this preamble is not limiting and, therefore, does not need to be construed. This argument has no merit. The antecedent basis for the "said wide range of service voltages" is within the preamble. The preamble is essential to understanding limitations in the claim body and limits the claim scope. The terms of the preamble shall be construed with their ordinary meaning; no further construction is necessary.[4]

4. The court declines to adopt plaintiff's proposed construction ("a meter used by an electrical utility for customer billing purposes that can be connected to a polyphase electrical service to measure electrical energy on more than one phase at a time"), which incorpo-

### 8. "Limiting the Voltage Applied to Said Transformer and to Said Components."

These terms shall be construed consistent with their ordinary meaning; no further construction is necessary.

## B. The '145 Patent

### 1. "Resistive Voltage Divider Means for Interfacing to Said Circuit to Receive an Input Voltage and for Dividing Said Input Voltage to Provide a Scaled Voltage Having a Predetermined Maximum Peak-to-peak Value over a Wide Dynamic Range of Standard Service Voltages, Wherein Said Resistive Voltage Divider Means Is Configured to Interface to Said Circuit Independent of the Type of 4–wire Service Provided."

■ This claim limitation is in means-plus-function format.[5] The claimed function is "interfacing to the circuit to receive an input voltage and for dividing the input voltage to provide a scaled voltage having a predetermined maximum peak-to-peak value over a wide dynamic range of standard service voltages." The resistive voltage divider means must be configured to interface to the circuit independent of the type of 4–wire service provided. The corresponding structure is two 1 meg ohm, 1/2 watt resistors and a 100 ohm—1000 ohm scaling resistor as shown in figure 2, and structural equivalents. ('145 patent, col. 5, 11. 39–55)

rates numerous limitations not supported by the ordinary meaning of the claim terms.

5. The court notes that construing this claim limitation in means-plus-function format is consistent with the prosecution history of the '145 patent.

### 2. "Scaled Voltage."

 The court shall apply the ordinary definition of the phrase "scaled voltage." Thus, the phrase "scaled voltage" shall be construed to mean "a voltage that is some fraction of the input voltage."

### 3. "Predetermined Maximum Peak-to-peak Value."

 The court shall apply the ordinary definition of the phrase "predetermined maximum peak-to-peak value." Thus, the phrase "predetermined maximum peak-to-peak value" shall be construed to mean "a predetermined value that the peak-to-peak voltage produced by the resistive divider will not exceed."

### C. The '527 Patent

### 1. "Non-volatile Memory."

 Consistent with the intrinsic evidence and plain meaning of the term, "non-volatile memory" shall mean "memory that retains stored information in the absence of power."

### 2. "Processing Said Voltage and Current Signals Based on Said Energy Formula and Associated Calibration Constants to Generate Data Representative of Energy Measurements and Related Information."

 Consistent with the intrinsic evidence of the '527 patent, the data generated by "processing said voltage and current signals based on said energy formula and associated calibration constants" shall be construed to always include watthour delivered and watthour received signals.[6]

---

**6.** "Processor 14 will always generate watthour delivered (Whr Del) and watthour re-

### D. The '508 Patent

### 1. "Energy Signal."

 Consistent with the intrinsic evidence of the '508 patent, "energy signal" means "a signal representative of the electrical energy determination made by the first processor, such as watthour delivered/received, volt amp reactive hour delivered/received, or volt amp hour delivered/received."

### 2. "Communication Connection Is Provided Between Said Option Connector and Said Second Processor."

 Consistent with the intrinsic evidence of the '508 patent, the phrase "communication connection is provided between said option connector and said second processor" shall mean "a two-way line of communication in which information may be sent from the option connector to the second processor or information may be sent from the second processor to the option connector."

ceived (Whr Rec) signals...." ('527 patent, col. 4, 11. 49–51)